**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**JERONE MCDOUGALD,**

    **Plaintiff,**

        **v.**

**ROSEANNA CLAGG, et al.,**

    **Defendants.**

**Case No. 1:18-cv-93**
**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

## OPINION AND ORDER

This case is one of roughly twenty cases that Plaintiff Jerone McDougald has filed over recent years against various prison officials and others alleging mistreatment of one form or another in connection with his incarceration. So far as the Court can tell, none of those suits have met with success. This case does not improve McDougald's batting average.

The instant case arises from mistreatment that McDougald allegedly suffered on September 28, 2017, at the hands of various corrections officers and medical personnel. The case is now before the Court on McDougald's Objection (Doc. 92) to Magistrate Judge Bowman's May 20, 2020, Report and Recommendation ("R&R") (Doc. 90), which recommends that this Court grant Defendants' Motion for Summary Judgment (Doc. 55). Additionally, McDougald has filed various other Motions, including a Motion to Proceed to Judgment (Doc. 89), two Motions for Leave to Amend (Docs. 94 & 96), and a Motion to Investigate (Doc. 98). For the reasons stated more fully below, the Court **OVERRULES** McDougald's Objection (Doc. 92), **ADOPTS** Magistrate Judge Bowman's R&R (Doc. 90), **DENIES** McDougald's other Motions

(Docs. 89, 94, 96, and 98), and **GRANTS** Defendants' Motion for Summary Judgment (Doc. 55) on all claims. Accordingly, the Court **DISMISSES WITH PREJUDICE** McDougald's Complaint (Doc. 1) and **DIRECTS** the Clerk to enter judgment.

## BACKGROUND

McDougald is currently incarcerated at the Southern Ohio Correctional Facility. In his Complaint, McDougald alleges he "was seriously injured on September 28, 2017 due to being severely beaten with PR24s[1] and punched, kicked, [and] stomped by Southern Ohio Correctional facility officers." (Compl., Doc. 1, #5). After that incident, McDougald received medical treatment. McDougald alleges that certain medical professionals who treated him, namely Defendants David Conley, Nurse Hart, and Roseanna Clagg (the "Medical Defendants"), neglected his medical needs. (*Id.* at #6).

On February 9, 2018, McDougald sued the Medical Defendants under 42 U.S.C. § 1983. In his Complaint, McDougald asserted that those Defendants violated his Eighth and Fourteenth Amendment Rights by acting with deliberate indifference to his medical needs. (Compl., Doc. 1, #6). McDougald specified that he was suing the Medical Defendants in their individual capacities only. (*Id.*). And that is about as much as the Court can gather with confidence from McDougald's Complaint, as relates to the allegedly deficient medical treatment.

---

[1] Prison officers use PR-24 batons to respond to jailhouse disruptions. (*See* R&R, Doc. #90, #1203).

On April 16, 2018, the Magistrate Judge issued an R&R (Doc. 8), which was adopted by Judge Barrett on May 15, 2018 (*see* Doc. 10) joining McDougald's separately-filed case, 1:18-cv-135, in which McDougald was asserting constitutional claims generally arising out of the same incident against Officers Joseph, Eaches, and Bauer (the "Officer Defendants"), all of whom worked for the Southern Ohio Correctional Facility. (*See generally* R&R, Doc. 8). In the complaint in that matter, McDougald claimed the incident began when he was standing in a docile position waiting to be cuffed. According to McDougald, the Officer Defendants used pepper spray on him "for no reason." (No. 1:18-cv-135, Compl., Doc. 7, #39). McDougald further asserts that, soon after that, the officers began physically assaulting him despite his compliance with their directions. (*Id.*). Citing those events, McDougald sued under 42 U.S.C. § 1983, contending that the Officer Defendants violated his constitutional rights. (*Id.* at #40). More specifically, the complaint alleged claims against the Officer Defendants in their individual capacities for use of excessive force, failure to protect, and cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, as well as unlawful retaliation in violation of the First Amendment. (*Id.* at #40–41).

## A.  McDougald's September 28, 2017 Incident With Prison Officers.[2]

Both of the now consolidated complaints relate to events that occurred on September 28, 2017. That day, Officers Joseph, Eaches, and Bauer (the "Officer

---

[2] The Court construes the factual record in the light most favorable to McDougald. Nevertheless, like the Magistrate Judge, the Court sometimes finds it necessary to rely on declarations and affidavits submitted by Defendants, as well as McDougald's medical records. (*See* R&R, Doc. 90, #1203). That is because of the lack of factual clarity surrounding

Defendants") came to McDougald's cell after receiving a report that McDougald had smeared excrement on a wall of his cell. (McDougald Dep., Doc. 54, #333). Upon the officers' arrival, McDougald asked to meet with a mental health provider. (*Id.* at #332). That led the officers to ask McDougald to come to the front of his cell to be handcuffed. (*Id.* at #335; Eaches Aff., Doc. 52, #295). The Officer Defendants maintain that McDougald refused to cooperate with their instructions, such that they fired pepper spray into McDougald's cell in response. (Eaches Aff., Doc. 52, #295). McDougald, by contrast, says he was in "cuff position" ready to be handcuffed when the door opened and the Officer Defendants sprayed him "for no reason." (McDougald Dep., Doc. 54, #335).

All agree that at the moment the cell door opened, McDougald ran towards it. (*Id.* at #341). According to the Officer Defendants, during the ensuing chaos, McDougald folded his arms under his body to avoid being handcuffed. (Eaches Aff., Doc. 52, #295). The officers then resorted to using their fists and a PR-24 baton to subdue McDougald. (*Id.*). After regaining control, the officers attempted to escort McDougald to the infirmary. (*Id.* at #296). Again, McDougald refused to comply. He went limp, causing himself and Officer Joseph to tumble to the floor. (*Id.*). Even so, the Officer Defendants succeeded in shepherding McDougald into the custody of

McDougald's version of the central incident in question either in McDougald's complaints, deposition, or other declarations. Where McDougald does address a particular factual matter, the Court notes any contradiction between his account and that of Defendants. Because of the Court's legal conclusion that McDougald has waived a necessary element of prevailing against Defendants' qualified immunity arguments with respect to each constitutional claim, the differences between McDougald's account and the accounts of Defendants are not central to the outcome here.

4

medical professionals. (*Id.*). The record is sparse concerning McDougald's version of these events. (*See generally* McDougald Dep., Doc. 54). That is at least in part because McDougald declined to respond to the Defendants' statement of proposed undisputed facts. One thing that is clear—after this incident, the government conducted a Use of Force investigation and found that McDougald's disobedience and unruly behavior justified the Defendant Officers' use of force and that the force used was not excessive given the circumstances. (Investigation Report Summ., Doc. 55-3, #486).

**B. McDougald's Allegedly Inadequate Medical Treatment**.

The jailhouse scuffle, however, is only the first half of this episode. Once the officers succeeded in transporting McDougald to the infirmary, Defendant Nurse L. Hart assessed McDougald and determined McDougald required outside medical treatment. (Eaches Aff., Doc. 52, #296). McDougald received treatment for his injuries at Adena Pike Regional Medical Center and The Ohio State University Wexner Medical Center. (Goodman Decl., Doc. 66, #864; Def. Mot. for Summ. J., Ex. F, Doc. 55-6, #796–97). There, medical staff, including Roseanna Clagg and David Conley, diagnosed him with a fractured orbital bone, swollen shoulder, swollen hands, chipped tooth, and swollen jaw. McDougald received follow-up care for his fractured orbital bone. (Mot. for Summ. J., Ex. F, Doc. 55-6, #796). Ohio State medical staff also administered an X-ray exam, which revealed no recent fractures. (*Id.*). And the medical exam report following the September 28 incident stated that McDougald suffered no other injuries. (Medical Exam Report, Doc. 55-3, #548).

## C.    Procedural History.

After the Court consolidated the two cases, Defendants moved for summary judgment. (*See* Def. Mot. for Summ. J., Doc. 55). They opposed all of McDougald's claims, including excessive force, deliberate indifference, failure to protect, retaliation, and violations of the ADA and Rehabilitation Act. (*Id.* at #447–48). In addition to contesting the merits of issues raised in McDougald's Complaint, Defendants argued that they were entitled to qualified immunity "on each of McDougald's claims filed against them in their individual capacities." (*Id.* at #448). On that point, Defendants claimed that "McDougald's allegations fail to show that any Defendant violated a clearly established constitutional right of which a reasonable official should have known." (*Id.* at #466). In their Motion for Summary Judgment, Defendants stated that "McDougald bears the burden of showing that his constitutional right was clearly established." (*Id.* at #467). Asserting that both the Medical Defendants and Officer Defendants acted in "good faith," Defendants concluded that McDougald could not defeat their claim to qualified immunity.

In response to Defendants' Motion for Summary Judgment, McDougald argued that the undisputed facts showed that Defendants violated his constitutional rights, or, at a minimum, there was a dispute of material fact sufficient to preclude granting Defendants' motion. (Resp. in Opp'n, Doc. 78, #1140). Although McDougald's response highlighted alleged facts, or at least factual disputes, that he believed supported his position, he failed to discuss the issue of qualified immunity at all. In other words, McDougald failed to identify the allegedly clearly established constitutional rights implicated by his Complaint. To be sure, McDougald asserted that Defendants'

6

actions violated his rights, but he omitted any direct explanation as to why the rights at issue were "clearly established," and thus why Defendants were not entitled to qualified immunity.

The Magistrate Judge agreed with Defendants and issued an R&R recommending that the Court grant Defendants' Motion for Summary Judgment and dismiss McDougald's case. Importantly, the Magistrate Judge determined that, in addition to succeeding on the merits of McDougald's claims, "all defendants are also entitled to qualified immunity." (*Id.* at #1212). She made that finding based on her determinations that (1) Defendants did not commit a constitutional violation under the facts asserted, and (2) at least as to the use of pepper spray, McDougald did not identify any "clearly established law" supporting his case. (*Id.*).

**D.    McDougald's Objections And Various Post-R&R Motions.**

After receiving a 14-day extension to object to the R&R, McDougald filed a timely Objection on June 6, 2020. (Objection, Doc. 92). There, McDougald asserts in a variety of ways that the Magistrate Judge erred in her ruling that, as a matter of law, Defendants did not violate McDougald's constitutional rights. (*Id.* at #1219–29). These include arguments that the Magistrate Judge relied on a defective record, impermissibly made factual inferences in Defendants' favor, and reached incorrect conclusions of law. (*Id.*). But, much like his opposition to summary judgment, McDougald's Objection makes little of the qualified immunity issue. In particular, his objection asserts in conclusory fashion that Defendants "are not entitled to qualified

immunity," but fails to provide the why and how, especially relating to the clearly-established nature of the rights allegedly at issue. (Objection, Doc. 92, #1229).

Defendants counter by arguing that McDougald failed to offer "any new insight, evidence, or the required analysis in support of his objections." (Def. Resp. to Objection, Doc. 93, #1232). To start, Defendants assert that McDougald failed to properly object to the Magistrate Judge's finding that the Defendants were entitled to qualified immunity. (*Id.*). In addition, Defendants contend that the Magistrate Judge undertook a proper review of the record, making all inferences in McDougald's favor, and that the Magistrate Judge correctly applied the law to grant summary judgment on the excessive force, deliberate indifference, failure to protect, and retaliation claims. In short, they claim that McDougald waived the qualified immunity issue and, in the alternative, raises no genuine dispute of material fact about the constitutional claims.

The Court also acknowledges that McDougald has filed various motions in addition to his Objection to the R&R. On May 4, 2020, he filed a Motion to Proceed to Judgment in Mention [sic] Civil Action (Doc. 89). It appears that this Motion requested the Court to issue a prompt ruling on the then-pending summary judgment motion. The Magistrate Judge shortly thereafter, on May 20, 2020, issued an R&R on the summary judgment motion. Next, McDougald filed a Motion for Leave (Doc. 94) on July 13, 2020, requesting to amend his objection to the R&R. A week later, on July 20, 2020, he submitted a Motion to Amend (Doc. 96), again seeking leave to amend his objection. Defendants opposed both Motions, arguing that the Motions were both

8

untimely and meritless. Most recently, on September 3, 2020, McDougald filed a Motion to Investigate (Doc. 98), asking the Court to investigate exhibits allegedly "stripped from the record."

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### A. Procedural Requirements For A *Pro Se* Prisoner Litigant At The Summary Judgment Stage.

Here, the petitioner is proceeding pro se. While a pro se litigant's pleadings are to be construed liberally and have been held to less stringent standards than formal pleadings filed by attorneys, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), pro se litigants must still comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). In other words, "[t]he leniency granted to pro se petitioners … is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). "Pro se plaintiffs are treated to less stringent standards but 'they are not automatically entitled to take every case to trial.'" *Id.* (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). There are two procedural aspects to McDougald's Complaints, Response to Defendants' Motion for Summary Judgment, and Objection that warrant brief discussion. The first point has to do with what is expected of

McDougald at the summary judgment stage. The second is related to the nature and specificity of his Objections.

### 1. *McDougald's Responsibilities At Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). When faced with a motion for summary judgment, the non-moving party cannot "rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). A litigant proceeding pro se is not held to a lesser or different standard. *See Viergutz v. Lucent Tech., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (noting that fact a litigant is proceeding pro se "does not alter his duty on a summary judgment motion"). While not held to any lesser standard, though, pro se *prisoners* generally are entitled to notice from the court about what is required of them at the summary judgment stage. *See United States v. Ninety Three Firearms*, 330 F.3d 414, 426–28 (6th Cir. 2003). It appears that McDougald did not receive such notice in this case. The Court concludes, however, that any error associated with that shortcoming is harmless. As noted, McDougald is a frequent pro se litigant in federal court. While he may not have received in this case the pro se notice regarding his obligations in responding to the Motion for Summary Judgment, he has received such notices in at

10

least four other recent cases in this Court. *See* Case Nos. 1:16-cv-497, 1:16-cv-900, 1:17-cv-124, and 1:17-cv-196. In short, the Court has little doubt that McDougald is aware of his obligations, and, consistent with that, he filed an opposition to the summary judgment motion at issue here, as well as an objection to the R&R, which is the topic to which the Court turns next.

### 2. *McDougald's Objection To The Report And Recommendation.*

"Like the filings of many pro se prisoners," objections to R&Rs are often "written in a stream of consciousness style that tries to throw as broad of legal reach as possible by citing to legal principles that are not directly applicable or are only tangentially related to the merits of [a] case." *Jones v. City of Fairlawn*, No. 5:03-cv-1976, 2005 WL 3543970, at *1 (N.D. Ohio Dec. 28, 2005). When a prisoner litigant offers only general objections, it "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Boyd v. United States*, No. 1:16-cv-802, 2017 WL 680634, at *1 (S.D. Ohio Feb. 21, 2017) (citing *Howard*, but noting "the objections of a petitioner appearing pro se will be construed liberally" (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). That is, a pro se prisoner must identify each issue in the R&R to which he objects with sufficient clarity that the Court can identify it, or else that issue is deemed waived. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

11

**B.**     **McDougald Failed To Object To The Magistrate Judge's Determination That Defendants Are Entitled To Summary Judgment.**

Here, as Defendants point out, McDougald failed to object to the Magistrate Judge's finding that qualified immunity bars McDougald's case.[3] "For a plaintiff to avoid summary judgment for the defendant based on qualified immunity, the plaintiff must show that the defendant (1) violated a constitutional right and (2) 'the violated right was clearly established when [the defendant] acted.'" *Banas v. Hagbom*, 806 F. App'x 439, 441 (6th Cir. 2020) (quoting *Shanaberg v. Licking County*, 936 F.3d 453, 455 (6th Cir. 2019)). To find a constitutional right "clearly established," the Court must determine that "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This question hinges on the specific context of the case rather than a broad general proposition. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Courts are free to determine whether defendants are entitled to qualified immunity on either the clearly-established precedent or constitutional violation grounds (or both), and they may consider those questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 242

---

[3] McDougald's Complaint in the related case makes a passing reference to alleged violations of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act. Although those claims are not precluded by qualified immunity, McDougald presents no basis for those claims. Most notably, he identifies no disability that would support a cause of action under the statutes. And asserting a qualifying disability is a threshold showing for invoking the ADA and the Rehabilitation Act. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 458–60 (6th Cir. 2020). Given that obvious shortcoming and the scant mention of the statutes in McDougald's briefing, perhaps it is unsurprising that the Magistrate Judge omitted the issue. What is more, McDougald does not attempt to reassert those claims in his Objection. But to the extent McDougald has raised these arguments, the Court **GRANTS** Defendants summary judgment on the ADA and Rehabilitation Act claims.

(2009). Here, the Court first turns to whether McDougald identifies a clearly established right.

To be sure, qualified immunity functions as an affirmative defense that defendants must raise and establish. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992) ("Defendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority..."). But plaintiffs bear the "ultimate burden of proof" on the issue. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("The ultimate burden of proof is on [plaintiff] to show that appellants are not entitled to qualified immunity."). And, most importantly for present purposes, "[i]t is a *plaintiff's burden* to show that the right at issue was clearly established." *Jackson v. City of Cleveland*, 925 F.3d 793, 822 (6th Cir. 2019), *cert. denied,* 140 S. Ct. 855, 205 L. Ed. 2d 460 (2020) (emphasis added). In other words, plaintiffs must articulate why the asserted constitutional rights count as "clearly established," or else qualified immunity bars those claims. To be sure, "[t]he Supreme Court has recognized 'that officials can still be on notice that their conduct violates established law even in novel factual circumstances' and has 'rejected a requirement that previous cases be "fundamentally similar"' to the facts in a case to render qualified immunity inapplicable." *Id.* at 823 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). But even with that caveat, plaintiffs must still make some argument about the constitutional right being clearly established at the time of the incident. And failure to meet that burden means that defendants receive qualified immunity. The bottom line is that, even if McDougald rightly argues that Defendants

13

violated his constitutional rights and the Magistrate Judge was wrong to conclude otherwise, in order to succeed he would still need to make an affirmative showing that the rights at issue were clearly established.

Against that legal backdrop, the Magistrate Judge here found that Defendants were entitled to qualified immunity because (1) McDougald failed to identify a "clearly established law" protecting inmates from being pepper-sprayed in response to a rules violation, and (2) McDougald "failed to show any violations of his Eighth Amendment Rights." (R&R, Doc. 90, #1212). The Court adopts the R&R's end result, but takes a slightly different route to get there, namely waiver.

In his Complaint, McDougald attempts to hold the Defendants liable in their individual capacities, meaning a successful qualified immunity defense would end his case. *See Banas*, 806 F. App'x at 441. Even so, McDougald's response to Defendants' summary judgment motion primarily argues that the record shows a genuine dispute of material fact about whether Defendants violated McDougald's constitutional rights, not about whether the rights were clearly established. (*See generally* Mot. to Deny Summ. J., Doc. 74; Resp. in Opp'n, Doc. 78). Similarly, McDougald's Objection to the R&R fails to discuss whether the rights at issue were clearly established, despite the Magistrate Judge's ruling that Defendants were entitled to qualified immunity. (*See generally*, Objection to R&R, Doc. 92). Indeed, McDougald's only discussion about Defendants' qualified immunity defense is a general declaration that Defendants "are not entitled to qualified immunity." (Objection, Doc. 92, #1229). McDougald's failure to expand on that assertion, i.e., to explain the how or why

behind it, is a glaring omission. What is more, nothing in McDougald's summary judgment briefing, or his objections here, even touches on whether the alleged constitutional rights were clearly established at the time of the incident.

As noted above, plaintiffs pursuing § 1983 claims bear the ultimate burden on the qualified immunity issue generally, and also the specific burden of showing that the rights at issue are clearly established. *Ruffin v. Nicely*, 183 F. App'x 505, 512 (6th Cir. 2006) (affirming district court's grant of qualified immunity because plaintiff failed to meet her "burden of proving that the [constitutional] right was clearly established"). Thus, McDougald's failure to address that issue in his briefing before the Magistrate Judge, coupled with subsequent events, gives rise to a variety of waiver concerns. First, his failure to press the issue before the Magistrate Judge constituted a waiver there. Second, and relatedly, issues not presented to the Magistrate Judge cannot be raised for the first time when a party objects to the R&R. *Murr v. United States*, 200 F.3d 895, 902 fn. 1 (6th Cir. 2000). Third, when a party fails to object with specificity to a Magistrate Judge's finding in an R&R—such as, for example, by not raising the issue at all—the district court treats that potential argument as waived. *Jones v. Moore*, No. 3:04-cv-7584, 2006 WL 903199, at *7 (N.D. Ohio 2006) ("A party who files objections to a magistrate's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'") (quoting *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981)).

15

Taken together, those propositions end McDougald's case. McDougald first waived the clearly-established-law issue before the Magistrate Judge when his response to Defendants' Motion for Summary Judgment omitted any mention of the issue altogether. And his briefing here, even generously construed, never meaningfully rebuts the R&R's finding that Defendants are entitled to qualified immunity. In total, McDougald's Objection contains a sole conclusory sentence contesting Defendants' entitlement to qualified immunity, and he provides no evidence or argument that Defendants' alleged actions violated his *clearly-established* constitutional rights. Given those failures, McDougald's § 1983 claims fall short as a matter of law, even if the Court agreed with McDougald's other objections to the R&R (e.g., that the Magistrate Judge did not consider certain facts about the jail-cell struggle or McDougald's medical treatment, that the Magistrate Judge impermissibly made factual inferences favorable to Defendants, that Defendant Joseph tampered with video footage, etc.). In short, McDougald's twin failures to address Defendants' qualified immunity arguments (i.e., first in opposition to summary judgment and then in his Objection) bind him in an inescapable double knot.

That is certainly true as to the pepper-spray claim, but it also extends to his deliberate indifference and failure to protect claims, as well. As to the pepper-spray claim, the R&R specifically found that there was no clearly established right at issue, so McDougald's failure to object to that finding waives any argument, meaning he cannot meet his burden of showing a clearly established right as to that claim. But,

16

on the other claims, the R&R found that all Defendants are entitled to qualified immunity based on McDougald's failure to show that the Defendants violated his constitutional rights *at all*. (R&R, Doc. 90, #1212). Merely because the R&R did not mention the clearly established right issue as to those claims does not alter McDougald's burden. By definition, if the Officer Defendants and the Medical Defendants did not violate McDougald's constitutional rights, they also could not have violated his clearly-established constitutional rights. So to overcome Defendants' argument that they are entitled to qualified immunity, and the R&R's acceptance of that argument, McDougald would still need to show *both* that the Defendants violated his constitutional rights *and* that those rights were clearly established. As before, McDougald's failure to address the clearly-established law prong, either in response to Defendants' Motion for Summary Judgment or in his Objection to the R&R, constitutes waiver of this essential issue. Therefore, the Court would decide the qualified immunity issue with respect to the deliberate indifference and failure to protect claims in Defendants' favor based on lack of clearly-established law even if McDougald had created a genuine dispute of material fact as to actual violation of his constitutional rights, which the Court sees no reason to believe is the case.

As for his First Amendment retaliation claim, McDougald points out that the R&R does not specifically address this claim. (Objection, Doc. 92, #1229). Defendants' Motion for Summary Judgment argued, however, that Defendants "are entitled to qualified immunity on each of McDougald's claims filed against them in their

individual capacities." (Doc. 55, #448). With respect to retaliation specifically, Defendants argued that McDougald "cannot provide the direct evidence needed to succeed on his claims of retaliation against Defendants Joseph, Bauer, and Eaches." (*Id.* at #461). The Magistrate Judge apparently concluded that summary judgment should be granted to Defendants on the retaliation claim. (*See* R&R, Doc. 90, #1212 (recommending grant of Motion for Summary Judgment and closure of case)). Because Defendants raised a defense of qualified immunity in their Motion for Summary Judgment, and because McDougald failed in his Response to their motion to identify clearly-established law relevant to his retaliation claim, McDougald once again waived the clearly-established prong of qualified immunity with respect to that claim. (Pl. Resp., Doc. 78, #1147). Although McDougald waived the clearly-established law prong of qualified immunity with respect to this issue only once, rather than twice as with his other claims, once is enough. Accordingly, the Court would again decide the qualified immunity issue in favor of Defendants on McDougald's retaliation claim even if McDougald had created a genuine dispute of material fact as to an underlying constitutional violation.

Nevertheless, out of an excess of caution, the Court will conduct a brief de novo review of the merits of McDougald's First Amendment retaliation claim. As Defendants point out, to prevail on such a claim, McDougald must satisfy a three-part test, showing that (1) he engaged in protected conduct; (2) he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the

protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The last requirement concerns the actual subjective motivation of the decisionmaker. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). Here, McDougald may have met his burden as to the first element by alleging that he was engaged in a lawsuit against Eaches and providing the civil action number. (Pl. Resp. in Opp. to Def. Mot. for Summ. J., Doc. 78, #1147; Objection, Doc. 92, #1229). As Defendants acknowledge, a prisoner civil rights lawsuit is the kind of activity that the First Amendment protects against retaliation. *See Thaddeus-X*, 175 F.3d at 396. The Court also assumes, but does not decide, that being pepper-sprayed would be an adverse action sufficient to deter a person of ordinary firmness (even if not McDougald himself) from filing another lawsuit.

The reason the Court does not have to decide either of these questions in this case is because McDougald simply puts forth no evidence that any Officer Defendant's decision to use force against him was subjectively motivated by the previous lawsuit McDougald had filed against Eaches. That is important because the causation element of a First Amendment retaliation claim concerns the subjective motivation of the decisionmaker. *Smith*, 250 F.3d at 1038. Here, McDougald's theory that the Officer Defendants pepper-sprayed him because of his previous lawsuit against Eaches, rather than, say, out of a desire to maintain order, or in response to his admitted act of smearing feces on his cell wall, lacks any apparent basis other than sheer speculation. Neither in McDougald's treatment of the issue in his Response to Defendants' Motion for Summary Judgment (Doc. 78, #1147), nor in his Objection to

19

the R&R (Doc. 92, #1229), does McDougald even attempt to point to any record evidence that any Officer Defendant's decision to use force against him was subjectively motivated by McDougald's filing of a previous lawsuit. Rather, McDougald simply makes the conclusory assertion that "the adverse action was motivated by the protected conduct." (Pl. Resp., Doc. 78, #1147; Objection, Doc. 92, #1229). That falls far short of the non-moving party's burden on summary judgment. *See Anderson*, 477 U.S. at 248 (non-moving party "must set forth specific facts showing there is a genuine issue for trial"). Because McDougald fails to create a genuine dispute of material fact as to whether any Officer Defendant's use of pepper spray against him was causally connected to his filing of an earlier lawsuit against Eaches, Defendants are entitled to summary judgment on the merits of McDougald's claim that they retaliated against him in violation of the First Amendment.

In sum, the Court agrees with the Magistrate Judge's conclusion to grant Defendants' Motion for Summary Judgment. All said, the Court exercises its discretion under *Pearson* to first consider the threshold question of whether any of the constitutional rights that the Defendants are alleged to have violated are clearly established. As McDougald bears the burden on that issue, but has failed to even mention it, the Court finds that he cannot succeed in showing that the Magistrate Judge erred in determining that qualified immunity is warranted here. In other words, the Court need not consider whether McDougald's asserted claims (i.e., excessive force, deliberate indifference, and retaliation) would succeed on the merits because qualified immunity would prevent liability even if the Magistrate Judge

erred by deciding that Defendants should prevail on the merits of those claims. (Although again, in an excess of caution, the Court does review McDougald's retaliation claim de novo and finds that summary judgment is warranted on the merits as well.) Thus, the Court **ADOPTS** the Magistrate Judge's R&R (Doc. 90) and **GRANTS** Defendants' Motion for Summary Judgment (Doc. 55).

## C.  McDougald's Motions Filed After His Objection Provide No Ground To Continue This Case.

Before the Magistrate Judge issued the R&R resolving Defendants' summary judgment motion, McDougald filed a Motion to Proceed (Doc. 89). That document urged the Court to make all necessary findings and rule on the pending summary judgment motion. Because the Magistrate Judge issued an R&R shortly after receiving that Motion, the Court agrees with the Magistrate Judge's determination that McDougald's concerns, as expressed in that Motion, have been addressed. Thus, the Court **DENIES** McDougald's Motion to Proceed (Doc. 89) as moot.

Next, McDougald filed two motions that sought to amend his Objection. The first came on July 13, 2020 (Doc. 94). In that motion, McDougald requested leave to amend his Objection to include an allegation that the Magistrate Judge committed procedural errors by violating Fed. R. Civ. P. 72. Specifically, McDougald contends that the Magistrate Judge erred by (1) failing to make a record of evidentiary proceedings, and (2) not considering the arguments made in opposition to summary judgment in docket entries 78 and 79. (Mot. for Leave, Doc. 94, #1242). On July 20, 2020, McDougald again moved to amend (Doc. 96), this time to correct an alleged typo relating to the summary judgment standard in his Objection. Defendants opposed

21

both motions for leave to amend, arguing that both were untimely, lacked merit, and were not supported by good cause.

The Court agrees with Defendants. The period for objecting to the R&R closed on June 18, 2020, well before McDougald filed his Motions for Leave. (*See* 6/4/20 Notation Order Granting Pl. Mot. for Extension of Time, Doc. 91). A movant seeking leave to file amendments to an objection filed after the objection deadline must show good cause. *McDougald v. Erdos*, No. 1:17-cv-00464, 2018 WL 4573287, at *2 (S.D. Ohio Sept. 25, 2018). Here, McDougald did not even attempt to show good cause for the late-filed amendments. To be sure, courts will provide pro se plaintiffs some leniency with objection deadlines, and a "court may excuse noncompliance" with those deadlines if it is in "the interests of justice." *Johnston v. Hamilton County Justice Ctr.*, No. 1:18-cv-864, 2021 WL 534601, at *7 (S.D. Ohio Feb. 11, 2021). But, as for McDougald's request to amend his Objection to fix a typo, the Court does not find the interests of justice served by delaying this matter to correct a non-material error, especially given that the Court, conducting de novo review, was not beholden to the Magistrate Judge's statement (or the parties' statements) regarding the summary judgment standard.

Regarding McDougald's complaint that the Magistrate Judge failed to consider McDougald's briefing, the Court observes that the Magistrate Judge directly cited McDougald's briefing in opposition to Defendants' Motion for Summary Judgment. (R&R, Doc. 90, #1207). Given that McDougald's procedural argument fails at first blush, the Court again finds no reason to grant McDougald leave to amend his

Objection. Accordingly, the Court **DENIES** McDougald's Motions for Leave (Docs. 94 and 96).

The last remaining motion is less straightforward. McDougald filed a Motion to Investigate (Doc. 98) on September 3, 2020. He claims that he attached a bevy of exhibits to his response in opposition to summary judgment that were "stripped from the record during the filing at the direction of federal Judges" and that the Magistrate Judge failed to mention "plaintiff's claims against Defendants Conley and Clagg in the R&R." (Mot. to Investigate, Doc. 98, #1258). As to the former, McDougald has been warned before about making unsupported allegations of judicial misconduct regarding his pleadings. (*See* 8/29/19 Order, Case No. 18-cv-498 (admonishing McDougald that "baseless allegations" that a "Magistrate Judge intentionally manipulated service" are "unacceptable and will not be tolerated by this Court")). Once again, though, he appears to do just that. In any event, even if McDougald's allegations in the Motion to Investigate were true (and the Court finds no reason to believe that they are), nothing about the allegedly missing documents addresses the above-mentioned shortcomings in McDougald's Objection and response to Defendants' summary judgment motion. The Court finds that McDougald loses on his claims because he has failed to identify any case law that makes the constitutional rights at issue here "clearly established" for qualified immunity purposes. Missing exhibits about factual matters would not and could not address that shortcoming.

Finally, as for the alleged failure to mention Conley and Clagg, while the R&R often refers generally to "Defendants," rather than specifically to each defendant by

name, this is of no consequence. For example, the R&R concludes that "[t]he behavior of Defendants after the incident does not show deliberate indifference to medical needs. Rather, Plaintiff was adequately cared for by Defendants both within SOCF and the external medical facilities." (R&R, Doc. 90, #1211). This conclusion plainly encompasses Conley and Clagg, who were among the medical personnel who treated McDougald. McDougald's argument that the R&R neglects to discuss his claims against Conley and Clagg is without merit.

For these reasons, the Court **DENIES** the motion (Doc. 98).

### CONCLUSION

Based on the above, this Court **OVERRULES** McDougald's Objection (Doc. 92), **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 90), and **GRANTS** Defendants' Motion for Summary Judgment (Doc. 55). The Court also **DENIES** McDougald's Motions to Amend, Motion to Investigate, and Motion to Proceed (Docs. 89, 94, 96, and 98). The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

October 5, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**